JL Powell Clothing LLC v. Joshua L. Powell Joseph Collins, on behalf of Appellant Joshua Powell, this appeal addresses whether a perpetual contract provision with no stated consideration for personal services is enforceable under Delaware law. Appellant Mr. Powell granted Appellant JL Powell LLC, which I call JLP for short, permission to use his personal name and endorsement in connection with JLP's business and further agreed that he would not lend his name to a similar business. Mr. Powell did not sell or permanently convey these rights to JLP, terms that appear over 30 times in Appellee's Brief and that you'll no doubt hear today. Those words do not exist in a contractual provision, which is found at 582 in the appendix. It is an express grant of a right, license, and permission to use, and such permission was gratuitous and revocable for an indefinite term. The term irrevocable shows up in Section 7 but does not show up in Section 7.1b. Such permission was in fact revoked a few years later after JLP fired Mr. Powell and the parties formally agreed to part ways and end their affiliation pursuant to a separation agreement. We submit that the District Court erred in ordering Mr. Powell to continue providing these rights and restrictions for his lifetime and without compensation we believe it is inequitable to force Mr. Powell to personally endorse and associate his name with a company that fired him. It is also inequitable to prohibit Mr. Powell permanently from using his own name in connection with any business that both he and the appellees engage in. You'll note that the term business is not defined in Section 7.1b. I may be mistaken, but you are here on the grant of a preliminary injunction, appealing from a preliminary injunction, is that correct? Yes, the Court ordered Mr. Powell to do what? Well, she focused on the second part of the preliminary injunction and the order. Mr. Powell was ordered not to use his name and endorsement in connection with his new business venture in the field. Okay, and one of your arguments is, apart from the general one, that even if the injunction were properly granted, it's too broad. Yes, under 65d. What is that argument, please? The argument is that there are cases addressed that under 65d the relief has to be specific enough that the person bound by the order knows the scope and limits of their conduct. Okay, so you said sort of for the rest of his life, no matter what business, but in fact the injunction refers to in connection with the field. Okay, so it's limited in that sense. So what's the other limit that you are concerned about? Is it the term using his name or endorsement, that you don't understand what that means? In terms of the ambiguity order, yes. As well as other people are not permitted to use Mr. Powell's name in connection with the field. And that is very broad. Every time Mr. Powell utters his name at work or in connection with his work or someone else utters Mr. Powell's name, he must go back and see if such utterance violates the preliminary injunction. No, he's simply directed to tell the people he's working with in connection with the field to stop using his name. The injunction doesn't permit anyone to use his name. The injunction is prohibitory, not permissive. Correct. So what's ambiguous about it? What's ambiguous about it? Using his name and endorsement in connection with his new business company, the field. And I cite some examples in the brief, is having a business card violative of the injunction. Is answering the phone, Joshua Powell at work, violative of the injunction. Somebody saying, hey Josh, when he steps into the office. And you have more or less a stipulation from the other side. That's sort of silly. That isn't what they mean. So this isn't merely a preliminary injunction, right? It is an appeal from a preliminary injunction, but as we point out in the briefs, many of these issues were pure questions of law. Any stipulation by counsel was not reflected in the order. Well, normally you go on, you have a trial, you get into these issues more, you put on new evidence. This only lasts until there is a hearing on permanent injunctive relief. Yes, Your Honor. And many of these issues were pure issues of law and we did not want to go to the end of the case and have to revisit these issues of law. And in fact, predominantly the issues with regard to specific performance are pure issues of law that we believe were erroneous, which would be a de novo standard of review. We believe that this agreement lacked consideration. We believe that this was a perpetual contract, which could be terminated at any time. And it is also an agreement for personal services, which we do not believe could be specifically enforced. Except on those issues, we have at best, if we have jurisdiction at all, we would have discretion. And without a developed record, very little incentive insofar as I can see to exercise that discretion. The linchpin of this appeal is the injunction order. Well, yes, Your Honor, but that's the only thing that you, I hear, as of right, to have reviewed. Actually, Your Honor, in Munaf v. Guerin, 553 U.S. 674, the U.S. Supreme Court stated the question of whether an action should be dismissed for failure to state a claim is one of the most common issues that may be reviewed on appeal from an interlocutory injunction order. That is exactly the case here. Also, the First Circuit has held that where there is any basis in the record, and the parties have had an opportunity to brief and the issues are questions of law that have been briefed by the parties, and we have motions to dismiss in this record, that the court can review that and actually not only vacate the injunction, but order the district court to dismiss what they refer to as a hopeless claim. But those quotations, if you read them carefully, all use precatory language. They're all permissive. They're not mandatory grants of discretion. Why on this record, which is undeveloped, where the district court has not made to be charitable elaborate findings, where we haven't had full discovery or a trial, why we should reach out for those records rather than remand and let the case proceed in a more orderly fashion. Well, what we would be left with would be the enforcement of this provision. This is a contractual provision that she felt there was a likelihood of merits that they would prevail and enforce this actual term. If the order is actually a little bit more narrow than the provision itself, but any evidence in the record as to a contractual provision would only be admissible if there were evidence about ambiguity, and neither party had asserted that the provision was ambiguous in any way. Setting aside this point about the likelihood of success and whether we should be getting into that in reviewing the preliminary injunction, there is a question about reparable harm that you raise, right? Whether there is a showing of a reparable harm that could justify it. I understand that the only basis for the district court saying that there was a reparable harm was the basis for the reparable harm finding? Not in itself. Could you just explain that? Yes. The two parties can agree that a reparable harm would flow from a breach of a contractual provision. Courts do not accept that at face value just because the two parties agree there in fact has to be irreparable harm. Here, you know, JLP, the first entity, isn't in the business of outdoor clothing anymore. It is essentially an empty shell that has a bank account and maybe some minuscule tasks. The second entity we submit in the papers did not do an effective job of showing irreparable harm. If they believe there is damages, there may be money damages or other damages that we believe could make the parties whole. The court, however, did not opine on any of that. The court simply felt, and I don't even think it was briefed by the parties, that there was a contractual provision between retail holdings, JLP, Inc., and JLP that there would be irreparable harm. I am not even convinced of that. Counsel, this doesn't, your argument which you are raising now, that additional irreparable harm findings would have been needed in addition to the stipulation. You just said this issue just wasn't brief to the district court, right? The contractual provision, but we did brief the issue of irreparable harm. Yeah, you both raised other irreparable harm arguments. I am not saying that wasn't briefed. But no one said to the district court, you can't just rest on that particular covenant in the contract. You have to do more. And then when the court comes out with its order, nobody goes back to the court and says, you know, you really have to make some additional findings here. Isn't that a fair assessment of where we are right now? Whether I could go back and ask for reconsideration, in my client's view, there were several issues of law that we believe were erroneous. You would be asking for a motion of reconsideration. I don't think Judge Lynch's question was whether you could do that or should do that, but was whether you did that and you didn't do it. We did not. So what we have, if we accept your argument, or if we are inclined to accept your argument, that the covenant alone isn't enough, we have an important issue, an issue necessary to the preliminary injunction, as to which we have no findings. All right? So don't we need, in order to figure out what we're dealing with, don't we have to get some findings on this issue? Not if you find as a matter of law that the provision is invalid. You would never get to that. No, no, no. Separately, I understand that. If there was no contractual agreement, there's bigger problems in the case. That's the truth. But on the contrary, the argument was that as a matter of law, before a preliminary injunction can issue, there needs to be a finding of irreparable harm based on more than a contract stipulation. Correct. If that's your argument, do you think there are any other findings we would need in order to resolve that question? I think the court could review. The issue of irreparable harm was briefed and argued on the record. But the district court didn't make any findings on the record. So I take your position is, for purposes of our review, we might not be able to uphold it on the ground that there is some additional evidence because we have no findings. But for purposes of reversal, since all that's before us is the contractual provision, your claim is that as a matter of law, that contractual provision cannot support the injunction. Is that the argument? Correct. Except you never made that argument to the district court. And had the district court made that argument, it might well have found there were other forms of relief. So I'm trying to be pragmatic here. If I could just point out, Your Honor, that because it wasn't briefed, it was never an issue. I needed to address defending a motion for preliminary injunction or felt obligated to volunteer. I didn't know this was going to be a proceeding. Sure. Is there any chance that the two of you might agree on language narrowing a preliminary injunction with which your client could live until these issues get resolved, including the issue of irreparable harm on remand? My client's not here, Your Honor, but there have been discussions about if there were specific instances, for example, not having your name in a catalog, which was what prompted all this in the first place, or having the names, you know, Josh Powell or J. Powell or anything that's similar to the J.L. Powell trademark. That could be something specific and narrow that could be discussed. Not using his name, not being able to endorse the company, the field, or lend his name to the company, the field, outside of catalogs would probably be a more difficult issue. One thing you could do to narrow the term use is to go back to the language of 7.1b, which has an express to use his name and endorsement to exploit, turn to account, advertise, otherwise profit from the company's goods. That's a possible way of limiting the term use. It would not solve all of your client's problems. But I'd like to ask the two of you to confer, and within ten days, is that a reasonable time period, get back to us on whether there's a possible narrowing of the injunction that would take care of the problem. For now, temporary. I'm just thinking this through, Your Honor. I think... You're going to get the order. The only question is how long you have. And so the question is the ten-day time period. Right. So if I understand the question is, could we agree to something temporary, pending... Okay. So you mean while this case is still pending here, not subject to a trial on a... Okay. I've got you. That's the part I didn't understand. No, you may not have me. It may be that there is an affirmance and remand. There may be a partial affirmance and remand. It may be that there is another order. But in the meantime, before this proceeding is concluded in both courts, I'm trying to see whether you can agree that your client will not use his name for his competing business in narrower terms than the district court issued the order. Okay. Now I understand, Your Honor. During the pendency of the lower court proceedings, we did enter into a standstill agreement. That was a very broad one. We would probably require a more specific one here. And if you're asking if we could do that, well, in the ten days before the court issues a decision... That's something I can confer with counsel about, yes. Okay. Ten days. All right. Now, we have interrupted you. You're five minutes over. But do you want to have two minutes of argument in any event? Thank you, Your Honor. I really just want to focus on what I think are the high points on the legal merits, one being that, in our view, the separation agreement superseded the contribution agreement. He could not act as an agent, act on behalf of JLP. There were negotiations to preserve rights to use his image and his likeness, but they did not specifically discuss Section 7.1b. Mr. Paul agreed that he would continue to abide by specific contractual provisions in his agreements, including an IP agreement and an employment agreement. But again, there was no mention of the contribution agreement or his obligations there under. Secondly, on consideration, there simply wasn't any. This was gratuitous. Often, like licenses, you can be revocable or irrevocable. Sometimes you pay up front for that license, and if you're good, you pay up front and you ask that it is irrevocable. Here, there was no payment to Mr. Paul for that right, for that permission. And obviously, the relationship soured, and he has now chosen to revoke that permission. And third would be term. This is a perpetual contract. Delaware law disfavors perpetual contracts, like many states. Courts are loath to hold people, particularly where there is personal services, and under the Planet Hollywood decision, where the image of the individual is intertwined with the endorsement, it is for personal services. He can't delegate these rights to somebody else, and to hold him forever under this perpetual provision, to refrain from using his name in connection with another business, and to continue lending his name to a company in which he does not want to endorse, would be subject to involuntary servitude. Okay. Thank you. Thank you. Mr. Newman, I don't think you're actually going to need 15 minutes, but I'm thinking less. Thank you. Good morning, Your Honor. If the Court please. I thought we'd start with that issue of scope of injunction, which is where I had intended to start, because although we addressed in the red brief, I don't think the written submissions were quite sufficient on the issue in appellate review. First, what is the standard of appellate review for the scope of an injunction? It's abuse of discretion. This Court has ruled we test the scope of an injunction for abuse of discretion. That's Ross Simmons of Warnick, Inc., the BACRAC, Inc., 217F3rd 8 and 14, First Circuit 2000. That citation was not in our written submission. So why, given the Court's colloquy. So you'll give it to us by a Rule 28J letter? Yes, Your Honor. Where that term becomes especially relevant here is that if the standard is abuse of discretion, how can the District Court exercise its discretion on the scope of an injunction if the issue is never presented to the District Court? And we made that argument in the red brief, and in the great brief, appellants say, well, you didn't tell us how we could do that. You mean the two of you before the District Court did not actually provide language for a preliminary injunction? That's right, Your Honor. We had a stipulated standstill agreement which resolved the issue. But going into scope of preliminary injunction, the other side argued kind of all or nothing on the merits, didn't suggest that an injunction needed to be tailored. Okay. Well, now you have a second chance in the next 10 days to come up with the equivalent of a standstill agreement. As we always would, Your Honor, but between for this Court, I would urge the Court that the proper role is to affirm the District Court's decision on remand for substantially ground stated, because this Court's also ruled that if the party fails to raise an issue as to scope of injunction below, it's waived and forfeited on appeal. Can't raise the issue for the first time on appeal. That's Philip Morris, Inc. against Harshberger. Well, we know the rule. Okay. So in terms of the Court's practical concern, of course, between the order of preliminary injunction and final ruling, if there really is a genuine issue of concern, if we really need to tailor that, we can work with counsel on something. But it would be, I think, improper for the appellate court to remand to the District Court now to say, need to hear the parties on that issue on the preliminary injunction. I'm just questioning that. We normally don't require parties to file motions to reconsider in order to exhaust remedies in the District Court. And so in a situation where the District Court did not, although it usually would, consult the parties on that issue, would it be appropriate for the District Court to say, no, the waiver principle really should preclude us from remanding if we believe that the scope of the injunction is wrong or the injunction is overly broad or not specifically tailored to the case? I think that's the teaching of Philip Morris, Inc. Your Honor. And it's not that the party has to file a motion for merits. There should be no injunction. But if there is, here's our concerns and here's how it should be tailored. That this Court has held that as a general rule, a disappointed litigant cannot surface an objection to a preliminary injunction for the first time in the appellate venue. Having preserved the advantages of an all-or-nothing strategy in arguing against the injunction, appellants may not belatedly obtain the benefits of the more moderate approach. But I think as a practical matter,  believe that the scope of the injunction is wrong or not specifically tailored to the case? Could you just address the irreparable harm point, which I take to be separate from this entirely? Yes. And I think that it would be the same analysis on appellate review, Your Honor. And I think the District Judge Torreson has a point. I think that the District Court, rather than making a finding of irreparable harm, says here's the contract. Now, do they have to make a motion for reconsideration in order to preserve the argument in that context? I don't quite get it. The contract was there. We had argued the contract as one grounds for finding irreparable harm. In your brief, you argued that irreparable harm could be based on the contract? No, below. That's what I'm saying. Below you did to the District Court? Yes, to the District Court we argued. We cited that contract provision. In connection with your irreparable harm argument? Yes. I thought you argued irreparable harm separately from the contention that there was this contractual provision. We argued irreparable harm, Your Honor, Judge Barron below, saying multiple grounds. First, it's in the contract. Second, look, there's a presumption. On these facts, it's impossible and impractical to ascertain damages. The same arguments the other side made on their motion for preliminary injunction. So I understand the way, if you argued it below, I understand the way of it. Just bearing with me, if I were to disagree that the record showed that you invoked the contract in support of your irreparable harm argument, I take it you would not say that they've waived it if they didn't respond and the record by itself sustains a finding of irreparable harm, particularly with the legal presumption for intellectual property. Does that mean that you're not relying on the contract alone for the irreparable harm finding? We never have relied upon that alone. So for us to affirm irreparable harm if we think it wasn't waived, we would have to conclude that the record somehow provides a basis for concluding there's irreparable harm despite no findings by the District Court. That's right, which we suggest it does, principally because of the legal presumption for intellectual property and no evidence in the record to overcome that presumption. But yes, that's the analysis. So those are the two issues on injunction, scope of injunction, and irreparable harm. We haven't heard a lot of argument on the merits or likelihood of success. As the courts correctly observe, this is a preliminary injunctive relief order where the standard is likelihood of success on the merits. But I would suggest this, and I think we did fully cover this in the red brief, but we'd suggest that the analytical framework for this acquisition transaction, probably three central points. First, the value of a J. L. Powell catalog company was the brand, and that brand was the personal name. So in the acquisition, naturally, the acquirer needed to acquire not only the trade name from the old company, but also the personal name from the founder. No party disputes that these transaction documents did affect that. There's no dispute about that. But second, the acquisition transaction was a purchase and sale and not a contractor license for personal services of indefinite duration, because first, the consideration was fully paid up front at closing. And second, the transaction didn't call for any future payments or performance of services by either side. But the contract language in the contribution agreement describing the right to use the personal name was couched in the language of sale and license, Your Honor. On that provision? Yes. It said granted the exclusive right and license and permission. How does that imply a sale? What makes it a sale was the consideration was paid up front. There was nothing more to be done. But as your opposing counsel has pointed out, you could have a license with the consideration paid up front. It happens all the time. You get a driver's license from the state, you make one payment up front, that license is with you for a particular number of years. If you had a license paid up front, it's yours. And this nature of this particular type of intellectual property, Your Honor, use of a name, the person never loses the name. It's not like granting real estate where, you know, you record the grant to the registry of deeds. This is how you can sell the right to a name. And what makes it a sale is not the parsing out of language as the substance of the transaction, that consideration closed. The cases cited by defendant appellants below were all contract cases where going right back to form and on contracts. If there's a contract of future reciprocal performances, which could include a license, a license where you're getting royalties back and forth for the use over time. So there's reciprocal benefits back and forth into the future. If those contracts are on specified duration, there's a law that on reasonable notice, the parties can decide not to do business with each other. Not true if the consideration is paid up front in full for whether it's a license or any other type of contract. Okay, what about his argument that he got no consideration? So the short answer would be, so what? There's no requirement that that promissor receive anything. That's the black letter law in Williston we cited in the red brief. And one of the classic examples would be the bank loan to a company where the bank requires an individual to provide a personal guarantee. We'd have to know there was a bargain between him and the other party that's paying the bank. So how do we know that in making this promise here, it was part of the bargain that led to the money going into the other entity? Because it's all in the contribution agreement, Your Honor, one transaction. So it's just 7.1 is the only basis? We just have to look at the text of 7.1 to figure out whether there was a real bargain, or do we look at the whole contract in the language of mutual covenants and mutual agreements and all of that? Well, I'm suggesting as a first step, it's the entire contribution agreement. Paragraph 7.1b is not a stand-alone contract. Okay, so it's the whole deal. Yes, the whole deal. And what's the language in that that indicates that this was one big bargain of which he was apiece, and he said, I'll throw in my name, you're going to give money to this entity, which is good for me. What's the? Okay, so first is to look at the transaction itself affected by the contribution agreement. That spells out all of the conveyance promises, et cetera, from, well, let's look at the transaction from the beginning. In the beginning, there's blue highways on the one side, and then there's Mr. Powell's old company and Mr. Powell on the other side. And what the parties agreed to was to affect a merger and acquisition transaction. They agreed to create a new shell entity. Blue highways puts in the $2.5 million, and on the other side comes both parts of the brand, from J.L. Powell Inc., the company, from Old Co., in comes all the trade names, and from Mr. Powell, the integral requirement of exclusive use of personal name. So your view is if you didn't put that money in, he could have enforced against you? I'm not sure I followed the question, Your Honor. If you didn't put the money in, that you could say is the consideration for this deal. Your view is that he could have enforced against you for failing to put the money in? Yes. Yeah. Of course. And that's the first step. And then in the second contractual step, well, who's the promisee? Well, it's the new shell entity. New Co. gets the cash. New Co. gets the assets from Old Co. and the enforceable promise from Mr. Powell. Did I answer the Court's question on that? Yeah. I just have one last thing on just the assignment issue. Yes. And how do we think about the security interest and whether that counts as an assignment? Is there anything in Delaware law that helps us on that point at all? Well, twofold. First, what's before us now, and second, what will be resolved by the district court later. Just do the one that's before us. Yeah. For the one that's before us, the Delaware cases that even the district judge included in the opinion just provided that there cannot be a material breach of a contract if the benefit of the bargain is not impaired. Well, here the benefit of the bargain was done at closing, and that benefit of the bargain went exactly where Mr. Powell bargained for it to go, 43% interest to Old Co. in the new venture that now has $2.5 million cash. That seems like that could be true in every case of a breach of an assignment clause. Is that not true? It's case by case, Your Honor. Can you think of a case that wouldn't be true? Because otherwise that's not the greatest of reasons. Well, primarily because that language of the pre-assignment is basically a pre-closing concern. I mean, these deals are typically done, the purchase and sale agreement in this case, and then they close later. And that's really to govern pre-closing assignments. That's really what that's for. But we can still address it here. That's probably why in this kind of deal where contract and closing all happen the same day, that really is a practical matter how there would be a material breach on an assignment like that. The secondary analysis probably doesn't need to be addressed here, but will be when we get back below is there was never an assignment by J.L. Powell, LLC. The transfers they're complaining about were when the secured lender, Blue Highways, foreclosed on assets. Blue Highways then assigned to J.L. Powell Clothing in a succession. Succession that, in fairness to the district judge, we need a more complete factual record to have a finding. That's why we didn't appeal the other part of the order. So questions from the Court? I don't think we have any at this point. Thank you both. It's been informative and helpful. And I hope, in fact, the Court's questions urge the parties to try to resolve this matter beyond a standstill agreement. Thank you, Your Honor. Have you been through the JAMS program here? We have. Okay, then. All right. Say no more. Thank you. Thank you, Judge. Yes. Oh, I'm sorry. Yes, you reserved time. You may have it. I'd be happy to waive that, Your Honor. No. And if he did, I'll ignore the waiver. He gets to argue. On the assignment issue, just briefly, typically in any acquisition agreement, where there's contracts out there, you need to get the consent of the other parties to the contract to assignment. If you don't get consent, sometimes you have to pay for the consent. But that's an everyday issue in every type of transaction. Even if this was an involuntary taking of the assets, these actual provisions are required, express prior written consent. And we took the position that because these rights were personal, Mr. Pauly actually had to get his consent as well. The benefit of the bargain issue, again, as I point out, JLP did not give Mr. Pauly anything. Mr. Pauly granted rights to JLP. Can I ask you that same question? So if they didn't pay, if his client didn't, or the money never got in, all this cash, could you enforce? Could Mr. Pauly enforce? Or are you out of luck if they just decide not to pay? Is that the kind of deal that you made? Well, Mr. Pauly's grants could be a nullity, potentially. He gave those in connection with the transaction. Your view is you have no right to make them pay? No. There's no third-party beneficiaries to the transaction, as expressly stated in there. I don't think he could do so. And he wasn't paid anything for this grant. But even if he was, and he wasn't, but even if he was, remember, JLP did not pay Mr. Pauly anything. Blue Highways, who isn't a party to Section 7.1, isn't a party to the contribution agreement, isn't a party to this lawsuit, paid $2.5 million for a majority stake in J.L. Pauly LLC, JLP. So in contribution of $2.5 million, it got a majority stake. J.L. Pauly, Inc. paid its assets, $4 million of assets, and 3.2 is where there's the 43% of the company. It actually says, in consideration, uses the word consideration, in consideration for J.L. P. Inc. giving its assets to the new LLC, it received a minority stake, 43%. Mr. Pauly, there's no promissor or promisee there. Mr. Pauly promised J.L. P. a right to use his name, and it's revocable. The word irrevocable shows up in other parts of Section 7, did not get anything in return. But even if you accepted the argument that there was some consideration to get the deal done, that was merely for Mr. Pauly to give the license. Even if he got paid $1 million to give the license, he could still revoke the license. If he sold it, if you said, you're going to stay out of the industry forever, and we're going to buy your name, and you agree you will never use your name in connection with an industry, that does happen. You can sell those rights. Joseph Abood did that. We referenced him in brief. He got $60 million for that. Mr. Pauly got nothing. And when the assets were taken, his company owned 43% of an empty shelf. So to say that the benefit of the bargain was not impaired, it absolutely was impaired by the assignment, because his old company now owned 43% of nothing.